NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 11 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, a non-profit organization; WILDERNESS WATCH, a non-profit organization, | No. 23-3872 |
| | D.C. No. 4:21-cv-00020-SHR |
| Plaintiffs - Appellants, | |
| v. | MEMORANDUM* |
| GARY WASHINGTON, as Acting Secretary of the United States Department of Agriculture; UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department; UNITED STATES FOREST SERVICE, a federal agency; BRET RUFF, as Acting District Ranger for the Glenwood Ranger District on the Gila National Forest; ED HOLLOWAY, Jr., as District Ranger for the Clifton Ranger District on the Apache-Sitgreaves National Forest, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Scott H. Rash, District Judge, Presiding

Argued and Submitted February 3, 2025
Phoenix, Arizona

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: CLIFTON, BYBEE, and BADE, Circuit Judges.

Western Watersheds Project and Wilderness Watch (collectively, Plaintiffs) appeal the district court's grant of summary judgment in favor of the U.S. Forest Service and other government defendants (collectively, Forest Service)[1] on Plaintiffs' claims under the National Environmental Policy Act (NEPA). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review a grant of summary judgment de novo and review the agency's compliance with NEPA under the Administrative Procedure Act (APA). *Bark v. USFS*, 958 F.3d 865, 869 (9th Cir. 2020). "Under the APA, we may overturn an agency's conclusions when they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). As the parties challenging the agency's action, Plaintiffs have the burden of persuasion. *City of Los Angeles v. FAA*, 63 F.4th 835, 842 (9th Cir. 2023).

    1.    Forest Service took the required "hard look" at the environmental

---

[1] Plaintiffs sued Forest Service and the U.S. Department of Agriculture, as well as Sonny Perdue in his official capacity as Secretary of the Department of Agriculture, Erick Stemmerman in his official capacity as District Ranger for the Glenwood Ranger District, and Ed Holloway Jr. in his official capacity as District Ranger for the Clifton Ranger District. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Gary Washington, in his official capacity as Acting Secretary of the Department of Agriculture, is automatically substituted as a party in place of Perdue; Bret Ruff, in his official capacity as Acting District Ranger for the Glenwood Ranger District, is automatically substituted as a party in place of Stemmerman.

impacts of the Stateline Project, which reauthorized livestock grazing on allotments in the Apache-Sitgreaves and Gila National Forests. *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008) (citation omitted). In the environmental assessment (EA), findings of no significant impact (FONSIs), and the documents incorporated by reference in the EA and FONSIs,[2] the agency provided "a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of the proposed action. *Id.* (internal quotation marks and citation omitted); *see also* 40 C.F.R. § 1508.9(a) (2019).[3]

Plaintiffs argue that Forest Service did not take a hard look at the effects of the proposed livestock grazing on the Mexican gray wolf, particularly regarding livestock-related wolf removals and prey displacement. But the record shows that Forest Service considered these issues (as well as other factors relevant to the project's effect on the Mexican gray wolf) and reasonably concluded that the

---

[2] Plaintiffs do not dispute that the EA and FONSIs incorporate by reference documents from Forest Service's consultations with U.S. Fish and Wildlife Service about the project. *See Jones v. Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 998 (9th Cir. 2013) (noting that an EA may incorporate underlying data by reference).

[3] The regulations implementing NEPA were amended in 2020. *See Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1210 (9th Cir. 2021) (citing 85 Fed. Reg. 43304 (July 16, 2020)). The parties agree that this case is analyzed under the pre-2020 regulations, which were in place at the time of the challenged decisions. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 879 n.5 (9th Cir. 2022) ("[W]e look to the [NEPA] regulations in place at the time of the challenged decision." (citation omitted)).

proposed grazing was not likely to adversely affect the subspecies.

Indeed, it is undisputed that (1) the proposed grazing area did not have documented Mexican gray wolf packs, dens, rendezvous sites, or territories; (2) twelve of the thirteen active allotments were outside the wolves' occupied range and had no reported wolf sightings or instances of wolf-livestock conflict; (3) the only documented instances of wolf-livestock conflict in the proposed area did not result in removals; (4) the Mexican gray wolf population within the Mexican Wolf Experimental Population Area (MWEPA) nearly doubled between 2016 and 2020 despite higher levels of grazing than those authorized by the Stateline Project; and (5) the allotments constitute only a small portion of MWEPA. Given these facts, Plaintiffs have not shown that Forest Service's conclusions were "unreasonable." *See Ctr. for Cmty. Action & Env't Just. v. FAA*, 18 F.4th 592, 599 (9th Cir. 2021) (citation omitted).

As for Plaintiffs' argument that Forest Service failed to take a hard look at the cumulative effects of past and future removals (both within and outside of the project area) on the genetic diversity of the Mexican gray wolf population, there is no evidence the Stateline Project is likely to cause removals. Thus, Plaintiffs have not shown that a loss of genetic diversity due to removals is a potential cumulative impact of the project. *See Ctr. for Env't L. & Pol'y v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1009 (9th Cir. 2011) (explaining that the party challenging an EA's

cumulative impacts analysis has the "initial burden to show 'the potential for cumulative impact'" (quoting *Te–Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 608 F.3d 592, 605 (9th Cir. 2010))). Accordingly, Plaintiffs have not shown that the EA's discussion of the cumulative effects fails to comport with NEPA.

2. Forest Service did not act arbitrarily or capriciously when it determined that an environmental impact statement (EIS) was not necessary because the Stateline Project would not have a significant effect on "the quality of the human environment." 42 U.S.C. § 4332(C); *see also* 40 C.F.R. §§ 1501.3(a), 1501.4, 1508.9 (2019). The EA and FONSIs show that Forest Service considered "both the 'context' and 'intensity' of the possible effects" of the project. *Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1008 (9th Cir. 2020) (quoting 40 C.F.R. § 1508.27 (2019)). Plaintiffs have not identified any facts that "raise substantial questions that would trigger the need for an EIS." *Native Ecosystems Council v. USFS*, 428 F.3d 1233, 1242 (9th Cir. 2005). Because Forest Service considered the relevant factors and "provided a convincing statement of reasons" explaining why the Stateline Project's effects were expected to be insignificant, it did not violate NEPA when it decided not to issue an EIS. *In Def. of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054, 1071 (9th Cir. 2014) (citation omitted).

**AFFIRMED.**

23-3872